UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X
:
GOLDEN LOOP, LLC,                                                       :
                                                                       :
                                    Plaintiff,                         :
                                                                       :                    25-cv-2469 (LJL)
            -v-                                                        :
                                                                       :                OPINION AND ORDER
LIVE NATION ENTERTAINMENT, INC.,                                       :
                                                                       :
                                    Defendant.                         :
                                                                       :
------------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 05/01/2026

LEWIS J. LIMAN, United States District Judge:

Defendant Live Nation Entertainment, Inc. ("Defendant" or "Live Nation") moves, pursuant to Federal Rule of Civil Procedure 56, for an order granting it summary judgment with respect to the complaint of plaintiff Golden Loop, LLC ("Plaintiff" or "Golden Loop") and granting it judgment as to its counterclaim against Golden Loop for filing a frivolous lawsuit. Dkt. No. 32. Defendant also moves, pursuant to Federal Rule of Civil Procedure 55, for entry of a default judgment as to its counterclaims against Plaintiff. *Id.*

For the following reasons, Defendant's motion for summary judgment against Plaintiff's unjust enrichment claim is granted, and Defendant's motion for default judgment and summary judgment on its counterclaim for filing of a frivolous lawsuit are denied.

## BACKGROUND

The background is drawn from the Defendant's unopposed statement of undisputed material facts pursuant to Local Rule 56.1.

Golden Loop is an LLC engaged in the merchandise business, with sole member Gary Brifil ("Brifil"). Dkt. No. 32-1 ¶¶ 1–2. Live Nation is a promoter of live events and concerts. Third party Looptify, Inc. ("Looptify") is an online company seeking to represent artists and

athletes. *Id.* ¶ 5. Looptify is associated with an individual named Nathaniel Llorando ("Llorando"). *Id.*

Live Nation has a relationship with Looptify which began in 2021, when Looptify provided Live Nation with masks to be handed out at Dave Chappelle ("Chappelle") comedy shows. *Id.* ¶ 8. In 2023, Live Nation agreed to purchase tote bags from Looptify to be distributed at Chappelle's performances in 2023. *Id.* ¶ 8. Live Nation paid a 50% deposit to Looptify up front for the tote bags and then was invoiced by Looptify for amounts remaining for each individual stop on the tour. *Id.* ¶¶ 9–10. In total, Live Nation paid approximately $2 million to Looptify for the tote bags between February 23, 2023, and October 26, 2023, in addition to some payments made for face masks. *Id.* ¶ 13. Live Nation paid the Looptify invoices directly to Looptify by wire transfer. *Id.* ¶ 12.

In turn, Looptify obtained the tote bags from Plaintiff. Plaintiff was introduced to Looptify when a mutual friend named Kree Turner put Brifil and Llorando together. *Id.* ¶ 3. In their meeting, Llorando advised Brifil that he was seeking 375,000 tote bags to be handed out at Chappelle comedy shows on his upcoming tour, promoted by Live Nation. *Id.* ¶ 4. Brifil visited the Looptify offices in Los Angeles, California, and engaged with a Chinese manufacturer to manufacture and ship the bags to the United States. *Id.* ¶¶ 6–7. Golden Loop invoiced Looptify monthly for the manufacturing and shipping of the bags. *Id.* ¶ 14. However, after making an initial payment to Golden Loop to cover some shipping costs in the first invoice, Looptify did not make any further payment to Golden Loop and never paid any invoice. *Id.* ¶ 17. Llorando represented to Brifil that the reason for the delayed payments was that Looptify was awaiting payment from Live Nation, *id.* ¶ 18, but Live Nation was in fact paying Looptify's invoices in full throughout the time Llorando was making these misrepresentations to Brifil, *id.* ¶ 19.

Between November 9, 2023 and December 1, 2023, Brifil emailed Llorando at Llorando's Looptify email address six times to address the issue of outstanding invoices. *Id.* ¶¶ 20, 23, 26, 29, 31, 36. Ultimately, the balance Brifil claimed in unpaid invoices totaled $490,545.20. *Id.* ¶¶ 34, 37.

Golden Loop never issued an invoice to Live Nation. *Id.* ¶ 16. Nor did Brifil mention Live Nation in any of his emails requesting payment from Looptify through November 29, 2023. *Id.* ¶¶ 22, 25, 28, 30. Eventually, after speaking with Danielle Deloache ("Deloache"), an employee of Live Nation, *id.* ¶ 42, Brifil told Llorando on November 29 that he had learned that Live Nation had paid Looptify in full for the bags, *id.* ¶ 33, and that Llorando's representations about delayed payments were false, *id.* ¶ 32. Live Nation had never heard of Golden Loop or Brifil until the call from Brifil to Deloache, *id.* ¶ 44.

On July 17, 2024, Brifil filed a lawsuit in Los Angeles Superior Court against Looptify and Llorando for breach of contract, fraud, unfair competition/business practices, and open book account. *Id.* ¶ 38. In it, Brifil accused Looptify and Llorando of stealing the tote bags, *id.* ¶ 39, and stated both that he was aware that Llorando had lied to him, *id.* ¶ 40, and that he was aware that Live Nation had fully paid Looptify for the tote bags, *id.* ¶ 41.

## PROCEDURAL HISTORY

Golden Loop initiated this case by complaint filed on March 26, 2025. Dkt. No. 1. Live Nation answered the complaint on May 19, 2025. Dkt. No. 7. On September 16, 2025, the Court granted Live Nation's motion to file an amended answer with counterclaims. Dkt. No. 18. Live Nation filed its amended answer and counterclaim on September 17, 2025. Dkt. No. 19.

On September 18, 2025, Live Nation filed a third-party complaint against third-party defendants Looptify, Inc and Llorando. Dkt. No. 21. Neither Looptify nor Llorando were served, answered, or otherwise appeared in this action.

Live Nation made this motion on March 2, 2026.  Dkt. Nos. 32, 34.  It also filed a memorandum of law in support of the motion, Dkt. No. 32-3, a Rule 56.1 statement, Dkt. No. 32-1, and an affidavit of counsel with exhibits, Dkt. Nos. 32-2, 32-4–32-20.  On March 13, 2026, Golden Loop filed a memorandum of law in opposition to the motion for summary judgment and a declaration in support of the opposition to summary judgment.  Dkt. Nos. 37–38.  It did not file a response to the Local Rule 56.1 statement.  Defendant replied on March 24, 2026.  Dkt. No. 39.

Golden Loop filed a letter motion for leave to file an answer to the counterclaim out of time and an answer to the counterclaim on March 13, 2026.  Dkt. Nos. 35–36.  Live Nation opposed the motion.  Dkt. No. 40.

## DISCUSSION

### I.    Default Judgment

The Court first addresses Plaintiff's motion to answer the counterclaims out of time, and Defendant's motion for a default judgment on its counterclaims.

"'A motion to file a late answer is closely analogous to a motion to vacate a default' since 'the party seeking to answer is given the same opportunity to present mitigating circumstances that it would have had if a default had been entered and it then moved under Rule 55(c) to set it aside.'"  *Neal v. 18 Susan CT LLC*, 2025 WL 1753248, at *1 (S.D.N.Y. June 25, 2025) (quoting *Graves v. Corr. Med. Serv.*, 2015 WL 1823456, at *2 (W.D.N.Y. Apr. 22, 2025), *aff'd* 667 F. App'x 18 (2d Cir. 2016)); *see also Integrity Comm's Corp. v. Baker*, 2011 WL 3874819, at *1 (S.D.N.Y. Aug. 5, 2011) ("The filing of late answer is analogous to a motion to vacate default.") (quoting *John v. Sotheby's, Inc.*, 141 F.R.D. 29, 35 (S.D.N.Y. 1992)); *Meehan v. Snow*, 652 F.2d 274, 275–76 (2d Cir. 1981).

Federal Rule of Civil Procedure 55(c) provides that a "court may set aside an entry of default for good cause."  Fed. R. Civ. P. 55(c).  The Second Circuit has "established three criteria

4

that must be assessed in order to decide whether to relieve a party from default." *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993). "These widely accepted factors are: (1) whether the default was willful; (2) whether setting aside the default would prejudice the adversary; and (3) whether a meritorious defense is presented." *Id.* Because the Second Circuit generally disfavors defaults, the "good cause" criteria "should be construed generously," and "when doubt exists as to whether a default should be granted or vacated, the doubt should be resolved in favor of the defaulting party." *Id.* "[A]ll doubts must be resolved in favor of the party seeking relief." *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005).

On the first factor, Plaintiff argues that its failure to answer was not willful, and that "[t]he omission resulted from oversight." Dkt. No. 36 at 1. It offers no other explanation for the delay and served its answer contemporaneously with its response to Defendant's motion for summary judgment and default judgment. "'Willfulness,' in the context of a default, refers to conduct that is *more* than merely negligent or careless." *Walden v. Lorcom Technologies, Inc.*, 2007 WL 608151, at *3 (E.D.N.Y. Feb. 23, 2007); *see also American Alliance Ins. Co.*, *Ltd. v. Eagle Ins. Co.*, 92 F.3d 57, 61 (2d Cir. 1996) (stating that there is "no reason to expand [the Second Circuit's] willfulness standard to include careless or negligent errors in the default context"). "Willfulness may be found when, for example, a defaulting party acts deliberately, egregiously, or in bad faith." *Haran v. Orange Business Services Inc.*, 2022 WL 2306945, at *2 (S.D.N.Y. Jun. 27, 2022). Relevant too is "the defaulting party's actions after it became aware of the existence of the litigation for entry of default." *Id.* Plaintiff submitted the proposed answer along with its brief in opposition to Defendant's motion for summary judgment and default judgment. Although this delay was negligent, alone it does not evince willfulness. *See American Alliance Ins,. Co., Ltd. v. Eagle Ins. Co.*, 92 F.3d 57, 61 (2d Cir. 1996) ("Gross

5

negligence can weigh against the party seeking relief from a default judgment, though it does not necessarily preclude relief"); *Puddu v. 6D Glob. Techs., Inc.*, 2020 WL 2833852, at *4 (S.D.N.Y. May 31. 2020) (explaining that "[w]hile it may have been careless or even grossly negligent for [defendant]—a sophisticated businessman who is no stranger to litigation" to fail to respond, "the Court cannot conclude – in light of his explanations and resolving all doubts in his favor—that [defendant's] actions rise to the level of willfulness"); *Seaford Ave. Corp. v. ION Ins. Co.*, 2022 WL 17669438, at *3 (E.D.N.Y. Dec. 14, 2022).

On the second factor, prejudice, "[d]elay alone is not a sufficient basis for establishing prejudice." *Davis v. Musler*, 713 F.2d 907, 916 (2d Cir. 1983). "'Rather, it must be shown that delay will result in the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud and collusion.'" *Belizaire v. RAV Investigative & Sec. Servs., Ltd.*, 310 F.R.D. 100, 106 (S.D.N.Y. 2015) (quoting *Davis*, 713 F.2d at 916); *accord Hong v. Mommy's Jamaican Market Corp.*, 2021 WL 6064101, at.*5 (S.D.N.Y. Dec. 22, 2021). There is no reason to believe that Defendant would be prejudiced if the Court received the late-filed answer. There has been ample, Dkt. No. 8, and extended, Dkt. No. 25, time for discovery. Defendant has moved for summary judgment on the basis of that evidence, and more importantly has moved, as an alternative to its claim for default judgment, for summary judgment against Plaintiff on its counterclaims.

"Finally, a party seeking to vacate an entry of default must present some evidence beyond conclusory denials to support his defense. A party's defense may be deemed meritorious for default purposes if the defense raises a significant issue; a party need not establish the merits of the defense conclusively." *Artmatic USA Cosmetics v. Maybelline Co.*, 906 F. Supp. 850, 855 (E.D.N.Y. 1995) (citations omitted); *see also Davis*, 713 F.2d at 916 (finding that a meritorious

6

defense is one that "justif[ies] further briefing and consideration by the district judge"). "Likelihood of success is not the measure. Plaintif[f's] allegations are meritorious if they contain 'even a hint of a suggestion' which, if proven at trial, would constitute a complete defense." *Weisel v. Pichel*, 197 F.R.D. 231, 239 (E.D.N.Y. 2000) (quoting *Keegel v. Key West & Caribbean Trading Co., Inc.*, 627 F.2d 372, 374 (D.C. Cir. 1980)).

Defendant's counterclaims are for abuse of process and filing of a frivolous lawsuit. On the first, Plaintiff answers that it has not "used legal process for an improper or collateral purpose," and "denies that the filing of a separate action against other parties in another jurisdiction constitutes abuse of process." Dkt. No. 35. On the second, it argues that it "denies that the filing or maintenance of this action constitutes frivolous conduct or that Defendant has suffered any damages as a result of Plaintiff's claims." *Id.* New York does not maintain an independent tort for filing of a frivolous lawsuit, and an action for abuse of process requires some process beyond the filing of a lawsuit, commonly "subpoenas, warrants, and writs of garnishment or attachment." *Mahn v. Allegis Grp.*, 2025 WL 3704536, at *5 (S.D.N.Y. Dec. 22, 2025) (quoting Restatement (Third) of Torts § 26 cmt. c (2020)). Although Plaintiff's answer is sparce, its allegations, "if proven . . . would constitute a complete defense." *Hong*, 2021 WL 6064101, at *3.

The three factors narrowly weigh in favor of accepting Plaintiff's late answer to Defendant's counterclaims. Plaintiff is therefore entitled to file its answer to the Amended counterclaims. Defendant's request for default judgment is accordingly denied.

## II.    Summary Judgment

Defendant has moved for summary judgment on both Plaintiff's unjust enrichment claim and its own counterclaims for abuse of process and filing of a frivolous lawsuit.

Under Federal Rule of Civil Procedure 56, a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of fact is 'material' for these purposes if it 'might affect the outcome of the suit under the governing law,'" while "[a]n issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Konikoff v. Prudential Ins. Co. of Am.*, 234 F.3d 92, 97 (2d Cir. 2000) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). In determining whether there are any genuine issues of material fact, the Court must view all facts "in the light most favorable to the non-moving party," *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 69 (2d Cir. 2001), and the movant bears the burden of demonstrating that "no genuine issue of material fact exists," *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002) (citations omitted). If the movant meets its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008).

Local Rule 56.1 of the Local Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York prescribes the manner and method in which a party is to present undisputed issues of fact to the Court. The moving party must annex to its notice of motion "a separate, short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried." Local Rule 56.1(a). The party opposing the motion for summary judgment is required to "include a correspondingly numbered paragraph admitting or denying, and otherwise responding to, each numbered paragraph in the statement of the moving party, and if necessary, additional paragraphs containing a separate, short and concise statement of additional material facts as to which it is

8

contended that there exists a genuine issue to be tried." Local Rule 56.1(b). The statements "must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)." Local Rule 56.1(d). The consequences of failure to follow these rules can be severe. "Each numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party." Local Rule 56.1(c).

Plaintiff did not respond to Defendant's Rule 56.1 statement of undisputed facts. Because the "statement of material facts . . . served by the moving party" has not been "specifically denied and controverted by . . . the statement required to be served by the opposing party," "for the purposes of the motion" the Local Rule 56.1 statement submitted by Defendant is "deemed to be admitted." Local Rule 56.1(c).

### A.    Unjust Enrichment

Defendant first moves for summary judgment against Plaintiff's unjust enrichment cause of action. "To prevail on a claim for unjust enrichment in New York, a plaintiff must establish (1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution." *Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of New Jersey, Inc.*, 448 F.3d 573, 586 (2d Cir. 2006) (quoting *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000) (Sotomayor, J.)). "The essential inquiry in any action for unjust enrichment . . . is whether it is against equity and good conscience to permit the defendant to retain what is sought to be recovered." *Mandarin Trading Ltd. v. Wildenstein*, 944 N.E.2d 1104, 1110 (N.Y. 2011) (quoting *Paramount Film Distrib. Corp. v. State of New York*, 285 N.E.2d 695, 698 (N.Y. 1972)); *see Caro Cap., LLC v. Koch*, 653 F. Supp. 3d 108, 119 (S.D.N.Y. 2023). "Generally, courts will look to see if a benefit has been conferred on the defendant under mistake of fact or

9

law, if the benefit still remains with the defendant, if there has been otherwise a change of position by the defendant, and whether the defendant's conduct was tortious or fraudulent." *Paramount*, 285 N.E.2d at 698 (citing Restatement (First) of Restitution § 1 (1937)). "Courts applying New York law require a plaintiff to allege some expectation of compensation that was denied in order to demonstrate that equity requires restitution." *Tasini v. AOL, Inc.*, 851 F. Supp. 2d 734, 749 (S.D.N.Y. 2012) (citing cases). "The 'essence' of such a claim 'is that one party has received money or a benefit at the expense of another.'" *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000) (quoting *City of Syracuse v. R.A.C. Holding, Inc.*, 685 N.Y.S.2d 381, 381 (4th Dep't 1999)); *see also Rhee v. SHVMS, LLC*, 2023 WL 3319532, at *12 (S.D.N.Y. May 8, 2023).

Plaintiff's unjust enrichment claim fails for several distinct reasons. First, "[u]nder New York law, a plaintiff asserting a claim of unjust enrichment must show that the defendant was enriched at the plaintiff's expense and that equity and good conscience require the plaintiff to recover the enrichment from the defendant." *Golden Pac. Bancorp v. FDIC*, 375 F.3d 196, 203 n.8 (2d Cir. 2004). The action requires a plaintiff to show "that the defendant has at plaintiff's expense been enriched and unjustly so, such as when the defendant receives the requested goods without paying any compensation therefore." *Hudson & Broad, Inc. v. J.C. Penny Corp., Inc.*, 553 F. App'x 37, 41 (2d Cir. 2014) (summary order) (quoting *S.S. Silberblatt, Inc. v. East Harlem Pilot Block*, 608 F.2d 28, 37 (2d Cir. 1979)). Put simply, there must be something that was unjustly retained by the defendant. "Receipt of a benefit at the expense of another is a necessary but not a sufficient condition of liability in restitution." Restatement (Third) of Restitution and Unjust Enrichment § 2 (2011); *see also Caro Cap., LLC v. Koch*, 653 F. Supp. 3d 108, 124 (S.D.N.Y. 2023) (to be unjustly enriched the defendant must have "actually received a

benefit," and "must either be put in possession of the benefit, or otherwise obtain financial relief because of the benefit.") (internal citations and quotations omitted).

It is uncontested on the evidence presented in the motion for summary judgment that Defendant paid for the tote bags it ordered in full.  Dkt. No. 32-1 ¶ 13; Dkt. No. 32-9.  It made those payments to Looptify pursuant to invoices submitted by that company to Defendant.  *Id.* Because Live Nation paid in full for the goods it received, it retained no unjust benefit and cannot be said to have been unjustly enriched.  *See Cap. Knitting Mills, Inc. v. Duofold, Inc.*, 519 N.Y.S.2d 968, 970 (1st Dep't 1987) ("Defendant, having fully paid . . . for the manufactured goods . . . cannot fairly be said to have been unjustly enriched.").  It is undisputed, too, that Plaintiff was never paid the money it was due from Looptify.  Plaintiff would undoubtedly have a strong claim for unjust enrichment as against Looptify, which did retain a benefit (receipt of the tote bags from Plaintiff) without payment therefore, and was accordingly unjustly enriched at Plaintiff's expense.  No such claim lies, however, against Live Nation, which paid in full for the goods that it received and thus cannot be said to have been unjustly enriched at the expense of Plaintiff.  In essence, Plaintiff would have Live Nation pay twice for the same goods—once to the party who sold it the bags and a second time to the entity that supplied those bags to the person with whom Live Nation contracted.

Second, although "a plaintiff need not be in privity with the defendant to state a claim for unjust enrichment," *Sperry v. Crompton Corp.*, 863 N.E.2d 1012, 1018 (N.Y. 2007), they do have "to assert a connection between the parties that [is] not too attenuated," *Georgia Malone & Co., Inc. v. Rieder*, 973 N.E.2d 743, 747 (N.Y. 2012).  "[A] plaintiff cannot succeed on an unjust enrichment claim unless it has a sufficiently close relationship with the other party." *Id*.  "New York courts have not enunciated a clear test for determining whether a relationship is 'too

11

attenuated.'" *Techno-Comp, Inc. v. Arcabascio*, 130 F. Supp. 3d 734, 744 (E.D.N.Y. 2015). It is clear, however, that although privity is not required, *see Sperry*, 863 N.E.2d at 1018, some minimum dealings or contacts are required, *see Rieder*, 973 N.E.2d at 747. Absent any direct contact, a relationship may nevertheless be sufficiently proximate to sustain an unjust enrichment claim if, for example, the defendant was "an officer of the corporation with which the plaintiff had contracted," or where the defendant was "aware[] of the plaintiff and the potential negative impact of its own conduct on the plaintiff[.]" *Chen v. New Trend Apparel, Inc.*, 8 F. Supp. 3d 406, 464 (S.D.N.Y. 2014) (citing *Bradkin v. Leverton*, 257 N.E.2d 643, 645–46 (N.Y. 1970)); *see also Anhui Aido Garment Co. v. Stern*, 2025 WL 1663860, at *8 (S.D.N.Y. June 12, 2025) (finding relationship sufficiently proximate where plaintiff "alleges it had a contractual relationship" with a "company under common control" with the defendant, and that the defendant "reached out to [plaintiff] on behalf of [the third party] to attempt to negotiate another deal."); *Bashian & Farber, LLP v. Syms*, 102 N.Y.S.3d 255, 258 (2d Dep't 2019) (finding relationship sufficiently proximate where the defendant and third party were "husband and wife," and the wife "attended meetings between [her husband] and the plaintiffs," and other evidence showed she was "at least aware[]" of plaintiffs' existence).

Here, viewing all facts in a light favorable to Plaintiff, Defendant is entitled to summary judgment on Plaintiff's claim for unjust enrichment because there is no evidence Plaintiff had any relationship with Defendant with respect to its purchase of the tote bags. Live Nation maintained a contractual relationship only with Looptify. It contracted with Looptify to procure the tote bags, paid Looptify a 50% deposit up front for those bags, and paid the remaining amounts through invoices supplied by Looptify. Dkt. No. 32-1 ¶¶ 8–10; Dkt. No. 32-6 ¶¶ 4–5;

12

Dkt. No. 32-7 (sample invoice).  Those payments were made by wire transfer, from Live Nation directly to Looptify.  Dkt. No. 32-1 ¶ 12; Dkt. No. 32-8 ¶ 6.

In turn, Plaintiff had a contractual relationship only with Looptify.  Plaintiff invoiced Looptify monthly for the manufacturing and shipping of the bags.  Dkt. No. 32-1 ¶ 14; Dkt. No. 32-10 (sample invoice).  When Looptify failed to pay those invoices, Plaintiff reiterated his belief that he was owed payment only by Looptify, and that he valued his "relationship with your company."  Dkt. No. 32-1 ¶¶ 14–30; Dkt. No. 32-11–32-14.  Plaintiff mentioned Live Nation for the first time on November 29, 2023, when he informed Llorando that he knew that "third party" Live Nation had paid for the tote bags in full.  Dkt. No. 32-1 ¶¶ 32– 35; Dkt. No. 32-15.  After that date, he continued to refer to the money as owed by Looptify.  Dkt. No. 32-1 ¶ 37; Dkt. No. 32-16.  Plaintiff only learned that Live Nation had made those payments after speaking with a Live Nation representative.  Dkt. No. 32-1 ¶ 42; Dkt. No. 32-4 at 207.

Furthermore, it is undisputed that Defendant had "never heard of either [P]laintiff or its sole member, Brifil, until the call from Brifil to Deloache," the Live Nation representative.  Dkt. No. 32-1 ¶ 44; Dkt. No. 32-4 at 206–07; Dkt. No. 32-8 ¶ 8.  On that call, "Brifil came to learn that Live Nation paid Looptify/Llorando for the bags in full," meaning that by that point, the purchase transaction by which Live Nation received the tote bags had been completed.  Dkt. No. 32-1 ¶ 42; Dkt. No. 32-4 at 207; Dkt No. 32-8 ¶ 10.

Viewing that evidence in the light most favorable to Plaintiff, no jury could conclude that Live Nation and Golden Loop had a sufficiently proximate relationship as to form the basis for an unjust enrichment claim.  Plaintiff has offered no evidence that Live Nation engaged Llorando or Looptify as its agent with the authority to procure the tote bags on its behalf, that Golden Loop understood Looptify to be acting with any apparent authority from Live Nation to acquire

13

the tote bags, or that Live Nation had any knowledge that Looptify was not directly providing the tote bags itself.[1]  To the contrary, the evidence conclusively establishes that there existed two distinct and unrelated commercial transactions: one between Live Nation and Looptify, and one between Looptify and Golden Loop.  There is no "sufficient relationship to impose potential liability" against Live Nation.  *Rieder*, 973 N.E.2d at 748; *see also Techno-Comp*, 130 F. Supp. 3d at 745 (granting motion to dismiss where the plaintiff did not allege any "relationship, dealings, or contact" with defendant); *Chen*, 8 F. Supp. 3d at 465 (denying summary judgment where a "trier of fact could . . . conclude that the [indirect defendants] were aware of the potential negative impact that their business dealings with [defendant] might impose on the [plaintiffs].").  As the New York Court of Appeals explained in *Rieder*, adopting Plaintiff's theory here "would require parties to probe the underlying relationships between the businesses with whom they contract and other entities tangentially involved but with whom they have no direct connection."  973 N.E.2d at 748.  "This would impose a burdensome obligation in commercial transactions."  *Id.*  Therefore, Defendant's motion for summary judgment to dismiss Plaintiff's unjust enrichment claim is granted.

### B.      Frivolous Lawsuit

Defendant also seeks summary judgment on its counterclaim for "filing a frivolous lawsuit."  Dkt. No. 32-3 at 14–16.  It has not moved for summary judgment on its second counterclaim for abuse of process.  Defendant has not identified, nor can the Court find, any cause of action under New York law for the filing of a frivolous lawsuit.  *See Chord Assocs., LLC v. Protech 2003-D, LLC*, 2010 WL 3780380, at *5 (E.D.N.Y. Sept. 21, 2010) ("The Court's

---

[1] "[T]he existence of 'apparent authority' depends upon a factual showing that the third party relied upon the misrepresentation of the agent because of some misleading conduct on the part of the principal—not the agent." *Hallock v. State*, 474 N.E.2d 1178, 1181 (N.Y. 1984) (quoting *Ford v. Unity Hosp.*, 299 N.E.2d 659, 664 (N.Y. 1973)).

independent research has not revealed any New York cause of action for 'vexatious litigation.'"); *Collins v. Alonso, Andalkar & Facher, P.C.*, 2021 WL 4477289, at *8 (D. Conn. Sept. 30, 2021) ("no such cause of action exists under New York law."). "The defense to purportedly frivolous litigation is generally to prevail in that litigation, not to seek a state-law tort remedy." *HC2, Inc. v. Delaney*, 510 F. Supp. 3d 86, 107 (S.D.N.Y. 2020) (quoting *Teddy Volkswagen of the Bronx, LLC v. Demersky*, 2020 WL 6424115, at *2 (S.D.N.Y. Nov. 1, 2020)).[2] Defendant's motion for summary judgment on its frivolous litigation counterclaim is therefore denied.

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment against Plaintiff's unjust enrichment claim is GRANTED, Defendant's motion for default judgment on its counterclaims is DENIED, and Defendant's motion for summary judgment on its frivolous litigation counterclaim is DENIED. The Clerk is respectfully directed to close Dkt. Nos. 32, 34, and 36. Defendant is requested to show cause by May 8, 2026 as to why its counterclaims should not be dismissed for failure to state a claim for relief.

SO ORDERED.

Dated: May 1, 2026
     New York, New York

LEWIS J. LIMAN
United States District Judge

---

[2] Nor would the alleged conduct constitute a valid abuse of process claim. "Under New York law . . . the mere 'institution of a civil action by summons and complaint is not legally considered process capable of being abused.'" *Manhattan Enters. Grp. LLC v. Higgins*, 816 F. App'x 512, 514 (2d Cir. 2020) (summary order) (quoting *Curiano v. Suozzi*, 469 N.E.2d 1324, 1326 (N.Y. 1984)). "[T]o qualify as legal process for purposes of an abuse-of-process claim, the court-issued writ must not only 'direct[] or demand that the person to whom it is directed shall perform or refrain from the doing of some prescribed act,' but also 'interfere[] with one's person or property.'" *Id.* (quoting *Williams v. Williams*, 246 N.E.2d 333, 335 (N.Y. 1969)). "[T]he filing of a complaint itself does not constitute the requisite 'unlawful interference with one's person or property under color of process.'" *Delaney*, 510 F. Supp. 3d at 107 (quoting *Williams*, 246 N.E.2d at 335).